IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LINDA L. RENNER,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO.: |
| v. | : | |
| | : | |
| **PROGRESSIVE NORTHERN** | : | 2:12-CV-2570-CDJ |
| **INSURANCE COMPANY,** | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM

Pending before the court are cross-motions for summary judgment filed by plaintiff, Linda Renner, (Doc. No. 26), and defendant, Progressive Northern Insurance Company, (Doc. No. 23). As discussed below, a thorough inspection of plaintiff's motion demonstrates that it is not properly termed a motion for summary judgment because it does not seek a decision on the merits of any of plaintiff's claims. Rather, despite its labeling, the motion essentially requests that the court issue a ruling as to the admissibility at trial of medical expenses to which she has already received compensation from her insurers. Therefore, her motion is actually a motion in limine, which this court will not entertain at this stage. As such, plaintiff's motion for summary judgment, (Doc. No. 26), which this court will construe as a motion in limine, will be **DENIED WITHOUT PREJUDICE** as premature. Furthermore, in light of the following discussion, defendant's motion for summary judgment, (Doc. No. 23), will be **DENIED**.

### BACKGROUND

The material facts of this case are largely undisputed. On December 20, 2006, Mr. Harry James of Wilmington, Delaware, was driving his vehicle in sun-glare conditions when he impacted a vehicle being driven by Mr. Dustin Samples, also of Wilmington. (Doc. No. 23, at 1; Doc. No. 25,

at 2.) As a result of the collision, the vehicle driven by Mr. Samples was propelled into the vehicle driven by plaintiff, Linda Renner, causing her extensive injuries. (Doc. No. 23, at 1; Doc. No. 25, at 2.) The accident occurred in New Castle County, Delaware. (Doc. No. 26, at 2; Doc. No. 29, at 1.) At the time of the accident, plaintiff was a resident of Pennsylvania, Mr. James was a resident of Delaware, and Mr. James' vehicle was registered and insured in Delaware. (Doc. No. 26, at 2, 3; Doc. No. 29, at 1.) The parties' respective statements of fact do not disclose where plaintiff's vehicle was registered or insured.

Plaintiff claims that the cost of medical care required to treat her injuries amounted to $306,277.58.[1] (Doc. No. 26, at 4.) She further claims that her auto insurer paid her $10,204.67, her health insurer paid her $85,131.81, and she has paid $5,281.04 out of pocket toward those expenses.[2] (Doc. No. 26, at 7.) She subsequently sued Mr. James in the Superior Court of the State of Delaware for injuries arising out of the accident and ultimately settled the case after obtaining an authorization from her insurance provider, Progressive Northern. (Doc. No. 26, at 3,5; Doc. No. 29, at 2, 3.) The settlement, which appears to have totaled $300,000, exhausted the limit of Mr. James' insurance coverage, but plaintiff claims that the sum was insufficient to fully compensate her for her injuries. (Doc. No. 26, at 4; Doc. No. 29, at 2.) Therefore, plaintiff submitted an underinsured motorist (IUM) claim to Progressive Northern, her insurance company, requesting payment of UIM benefits. (Doc. No. 26, at 6; Doc. No. 29, at 3.)

Plaintiff's insurance policy with Progressive contained the following provision regarding

---

[1] Defendant admits that plaintiff alleges these figures in her complaint but disagrees as to their accuracy. Nonetheless, plaintiff's medical expenses are not at issue at this time.

[2] As noted in footnote one, these figures are not at issue here.

Underinsured Motorist Coverage:

> Subject to the Limits of Liability, if you pay a premium for Underinsured Motorist Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured person is entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:
>
> 1.  sustained by an insured person;
>
> 2.  caused by an accident; and
>
> 3.  arising out of the ownership, maintenance, or use of an underinsured motor vehicle.[3]

(Doc. No. 26, Exh. B, at 37.)

The policy also provided, "Any dispute as to the coverages provided or the provisions of this policy shall be governed by the law of the [state] listed on your application as your residence." (Doc. No. 23, at 2; Doc. No. 25, at 3.) As noted above, the parties agree that plaintiff was a resident of Pennsylvania at the time of the accident and that Pennsylvania was listed on the application as her state of residence. (Doc. No. 23, at 2; Doc. No. 25, at 3.)

## DISCUSSION

The crux of this matter is a dispute over the application of the collateral-source rule, which "is an equitable doctrine that permits an injured person to recover the full amount of his or her provable damages, regardless of the amount of compensation that the person has received for his or her injuries from sources unrelated to, or collateral of, the defendant." 25 C.J.S. *Damages* §189 (2014); *see also Ocasio v. Ollson*, 596 F.Supp.2d 890, (E.D.Pa. 2009) (citing *Nigra v. Walsh*, 797 A.2d 353, 356 (Pa.Super.Ct. 2002); *Miller v. State Farm Mut. Auto. Ins. Co.*, 993 A.2d 1049, 1053

---

[3] Plaintiff agrees with defendant about the language of the contract, objecting only to minor formatting errors. (Doc. No. 29, at 2-3.)

(Del. 2010). The collateral source rule essentially authorizes double recovery of compensatory damages on the principle that the tortfeasor, who would benefit from getting an offset to damages, has no interest in and should not be allowed to benefit from insurance purchased by the plaintiff. 25 C.J.S. *Damages* §189 (2013) ("The collateral-source rule is an exception to the general rule of damages preventing double recovery by an injured party."); *Miller*, 993 A.2d at 1053 (explaining rationale behind rule). In the case at bar, the parties agree that Delaware follows the collateral source rule but that Pennsylvania does not. As such, there is a sharp dispute over which state's law applies to this matter, one which this court must resolve in order to reach the subsequent question: can plaintiff recover damages under a UIM claim for which she has already received compensation from a collateral source?

Plaintiff argues that Delaware law applies, citing her insurance policy's UIM provision as support for her position. According to plaintiff, defendant's liability for UIM benefits is derivative of Mr. James liability because the UIM clause provides that the insured may recover money "which an insured person is entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury." (Doc. No. 26, Exh. B, at 37.) Defendant, on the other hand, contends that the contract contains a Pennsylvania choice-of-law clause that compels application of Pennsylvania law. That clause states, "Any dispute as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on your application as your residence." (Doc. No. 23, at 2; Doc. No. 25, at 3.)

The Third Circuit has found that language like that enunciated in the UIM portion of plaintiff's policy creates a derivative form of liability, binding the UIM insurer to the liability of the tortfeasor. *Willett v. Allstate Insurance Company*, 359 Fed. App'x 349, 351 (3d Cir. 2009) (finding

derivative liability where policy provided "we will pay damages . . . for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured auto.") In the *Willett* case, Deborah Willett sued the negligent driver who was responsible for the death of her son, ultimately settling the claim for $454,249, the maximum award permitted under Maine law but well below the amount that Ms. Willett claimed she was entitled. *Id.* at 350. Ms. Willett then brought an underinsured motorist claim against her insurance provider claiming damages above and beyond the settlement amount. *Id.* Her insurance company denied the claim on the ground that she had already received all the damages to which the decedent was entitled under the policy. *Id.* Ms. Willett filed suit against her insurer, and both parties moved for summary judgment. *Id.* The court determined that Maine law applied to Ms. Willett's underlying claim against Mr. Persiak, and, because she had already been awarded maximum damages under Maine law, granted summary judgment in the insurer's favor. *Id.* The Third Circuit affirmed the district court's order and found that the contract provision, which stated "we will pay damages . . . for bodily injury which an insured is legally entitled to recover from the owner or operator of an underinsured auto," created derivative liability. *Id.* at 351. The court opined:

> The issue in this case is, therefore, the meaning of the policy langugae limiting recovery to damages that decedent was "legally entitled" to recover from Piersiak. This phrase clearly and unambiguously states that coverage depends upon the decedent's legal right to damages from Piersiak. If decedent has no right to recover damages from Piersiak, then Allstate is required to pay only that amount. In short, Allstate's contractual liability, as established by the provisions of its policy, is derivative of Piersiak's tort liability.

*Id.*

Therefore, the Third Circuit determined that Ms. Willett could only recover from Allstate Insurance what she could have recovered from Mr. Piersiak, $400,000. *Id.*

Looking to the facts of this case, plaintiff's insurance policy language is, in all material respects, identical to that found in *Willett*. The UIM provision states, in relevant part:

> Subject to the Limits of Liability, if you pay a premium for Underinsured Motorist Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured person is entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:
>
> 1.  sustained by an insured person;
>
> 2.  caused by an accident; and
>
> 3.  arising out of the ownership, maintenance, or use of an underinsured motor vehicle.

As such, the court believes that the UIM provision creates derivative liability on the part of Progressive vis-a-vis Mr. James, the tortfeasor in the underlying tort claim. Moreover, the parties concede that plaintiff's lawsuit against Mr. James was governed by Delaware law and that Delaware follows the collateral source rule. As such, plaintiff was entitled to recover full damages from Mr. James without an offset for benefits received from collateral sources. Because Progressive's liability is derivative of Mr. James, plaintiff is likewise entitled to recover UIM benefits from Progressive without an offset for collateral sources.

Defendant counters by arguing that the insurance policy contains a choice-of-law clause that provides for the application of Pennsylvania law to this dispute. (Doc. No. 23, Attach. 1, at 7-8.)That clause states, "[a]ny disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on your application as your residence." (Doc. No. 23, Attach. 1, at 7.) Defendant points out that there is no dispute that plaintiff's application listed a Pennsylvania address. (Doc. No. 23, Attach. 1, at 7.) Therefore, defendant concludes that Pennsylvania law must control. (Doc. No. 23, Attach. 1, at 7.)

The court acknowledges that the choice-of-law clause and the UIM clause are somewhat contradictory concerning what state's law applies to the contract. Fortunately, principles of contract construction provide a useful guide for resolving these ostensibly paradoxical provisions. Under Pennsylvania and Delaware law,[4] courts have determined that, when there are two conflicting contract clauses, the specific language qualifies and controls the more general language. *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 960 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general ones."); *Southwestern Energy Production Co. v. Forest Resources, LLC*, 83 A.3d 177, 187 (Pa.Super.Ct. 2013) ("[T]he specific controls the general when interpreting a contract."). The choice-of-law clause on which defendant relies addresses disputes over two broad areas: insurance coverage and the policy language interpretation. The UIM clause, on the other hand, addresses the more narrow question of what law applies in a UIM claim. As such, the clause on which plaintiff relies is the more specific of the two and controls in this case.

The court is cognizant that this holding may result in a double recovery by Ms. Renner. However, Delaware embraces double recovery under DEL. CODE ANN, tit. 21, §2118, in order to "encourage motorists to purchase underinsured motorist coverage," and based on the premise that "a tortfeasor has no interest in, and therefore no right to benefit from monies received by the injured person from sources unconnected with the defendant." *Miller v. State Farm Mut. Auto Ins. Co.*, 993 A.2d 1049, 1055 (Del. 2010) (rule encourages motorists to purchase insurance); *Mitchell v. Haldar*,

---

[4]Because the court determines that both states have materially identical rules of contract construction, there is not need to determine which state's contract-construction rules apply.

883 A.2d 32, 37-38 (Del. 2005) (tortfeasor has no interest in insurance). Of course, here plaintiff stands to benefit from a double recovery from her insurer, not the tortfeasor, because she initially recovered medical costs through her PIP and health insurance coverage and now seeks underinsured motorist coverage from her insurer for those same expenses. The court notes that the policies underlying the collateral source rule may be less compelling under these circumstances than in a situation where a party's second recovery is from a tortfeasor. Nonetheless, neither party has addressed this distinction, and the court's holding nonetheless supports Delaware's policy of encouraging motorists to purchase underinsured motorist coverage. *Miller*, 993 A.2d at 1055. Therefore, the court finds that Delaware law and, concomitantly, the collateral source rule applies to this case. As such, defendant's motion for summary judgment is **DENIED**.

## CONCLUSION

In light of the foregoing, the court has determined that the insurance policy's UIM clause controls over the general choice-of-law provision and that the UIM clause requires the court to apply Delaware's collateral source rule. Therefore, the court will **DENY** defendant's motion for summary judgment, (Doc. No. 23). Furthermore, plaintiff's motion for summary judgment, (Doc. No. 26), which this court will construe as a motion in limine will be **DENIED WITHOUT PREJUDICE** as premature.

        **BY THE COURT:**

        /s/ C. Darnell Jones, II

        _____
        **C. DARNELL JONES, II   J.**